GRIMES (FENWICK v.). See Cases Nos. 4,-733 and 4,734.

———

## Case No. 5,828.

### GRIMES et al. v. UNITED STATES.

[Hoff. Land Cas. 107.] [1]

District Court, N. D. California. Dec. Term, 1855.

LAND GRANT—ABANDONMENT—BOUNDARY.

Objections removed by additional testimony, and by the ruling of the supreme court in Fremont v. U. S. [17 How. (58 U. S.) 542.]

Claim for eight leagues of land in San Joaquin county, rejected by the board, and appealed by the claimants [Hiram Grimes and others].

A. C. Whitcomb, for appellants.
S. W. Inge, U. S. Atty.

HOFFMAN, District Judge. The claim in this case was rejected by the board of commissioners. Since the filing of the transcript in this court, additional testimony has been taken, and the case has been submitted on the brief filed by the counsel for the appellees. No argument was made or brief filed on the part of the United States, and the district attorney, it is presumed, relies upon the objections to the claim which are set forth in the opinion of the board.

With regard to the delivery of the original

———

[1] [Reported by Hon. Ogden Hoffman, District Judge, and here reprinted by permission.]

grant to the grantee, the commissioners, although their decision is not placed upon that ground, seem to have entertained some doubt, from the fact that it is not produced by the claimants. But we think that this objection, whatever force it might have under the testimony submitted to the board, is entirely obviated by the evidence of Mr. Evershed, Capt. Halleck, and Balentin Higuera, taken in this court. The circumstance that the grant is found among the archives and not in the possession of the party is by these witnesses satisfactorily explained.

With regard to the performance of the conditions, it appears that the original grantees had, before obtaining the grant, but subsequently to the date of their application to the governor for the land, built a corral upon it and placed there about two hundred head of horses and some work oxen. Higuera also built a sort of rude hut in which he lived, and the witness Romero testifies that he was on the rancho about fifteen or sixteen days assisting Higuera. The further improvement of the land seems in some degree to have been prevented by the Indians, and in 1849 the grantees sold out to McKee, under whom the appellants claim, and who appears to have laid out a city on the rancho. There were in 1850 six frame buildings on the site of the intended city, and McKee seems to have expended considerable sums of money on his purchase. It is also stated in the deposition of Hernandez, whose rancho adjoined that of Higuera and Feliz (the grantees in this case) that the latter occupied the land along the San Joaquin river up to the Arroyo de la Puerta, and had upon it a corral and a house on the banks of the San Joaquin, about opposite the Stanislaus river. The witness, however, assigns no date at which the corral and house were erected. Higuera, one of the original grantees, who swears that he no longer has any interest in the case, testifies that soon after obtaining the grant he built a corral and house on the land, and had cattle and horses thereon, but took them away in 1849 through fear of the Indians.

Under all the testimony of the case, we think there is nothing to show that the performance of the conditions has been unreasonably delayed, or that the grantees had abandoned their grant. The objection, therefore, of nonperformance of conditions must, under the principles laid down in Fremont v. U. S. [17 How. (58 U. S.) 542] be overruled. With regard to the location of the grant, there seems to be no difficulty. In the title the land is described as the tract known by the name of "Pescadero," and bounded by the river, by Buenos Ayres to the Pass of Pescadero, and the limits which shall be set at the time of the possession, on the side of the valley. In the fourth condition, the land is declared to consist of eight leagues, or a little less, as the corresponding map explains. On reference to the map the boundaries of the tract appear to be-

delineated with tolerable accuracy, and the testimony in the case leaves no room for doubt that its limits are well known and capable of being precisely ascertained. The grant, it will be perceived, mentions two boundaries—the river (San Joaquin) and Buenos Ayres to the Pass of the Pescadero. The Arroyo de la Puerta seems also indicated as the southerly boundary of the map, but all doubt on this subject is removed by the evidence, not only of the colindantes and others who testify as to the extent and boundaries of what was known as the "Pescadero Rancho," but by the production of the expediente for the Hernandez rancho, which lies immediately to the south of the tract now claimed. In the diseño which accompanies that expediente, the Arroyo de la Puerta is distinctly marked as the lindero or boundary of the two ranchos, the arroyo forming in fact the northern boundary of the Hernandez and the southern boundary of the Pescadero ranchos. The boundaries seem thus to have been fixed or recognized by the highest authority, the governor himself, almost contemporaneously with the grant, for the Hernandez concession was made but a few days after the grant under consideration.

The above are all the objections to the validity of the grant which are noticed in the opinion of the commissioners, and none other have been suggested to this court. The expediente in this case is defective, for the decree of concession is not contained in it. Whatever suspicions this fact might give rise to, are dispelled by the proofs which have been submitted of the execution and delivery of the formal title to the grantees, and the almost contemporaneous grant to Mariano and Pedro Hernandez, in which the governor mentions the land of "Don Balentin Higuera" as one of the boundaries of the tract granted to them. The mesne conveyances seem to be regular, and a decree of confirmation must therefore be entered.